UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————X

AMAN KUMAR,

                 Petitioner,

            -against-

ERIC H. HOLDER, Attorney General,
DEPARTMENT OF HOMELAND SECURITY,
RAND BEERS[1], Acting Secretary of
Department of Homeland Security, UNITED
STATES CITIZENSHIP & IMMIGRATION
SERVICES, ALEJANDRO MAYORKAS,
Director of United States Citizenship &
Immigration Services, and CAROL KELLER[2],
Acting District Director of New York District
Office of United States Citizenship &
Immigration Services,

                 Respondents.
————————————————————————X

**OPINION & ORDER**
**12-cv-5261 (SJF)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  NOV 18 2013  ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

I.    Introduction

On or about October 19, 2012, petitioner Aman Kumar ("petitioner") commenced this proceeding against respondents Eric H. Holder, Attorney General of the United States; the United

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Rand Beers, Acting Secretary of the United States Department of Homeland Security, is automatically substituted as a party to this action in place of Janet Napolitano, who was sued in her official capacity as the Secretary of the Department of Homeland Security, (Petition ["Pet."], ¶ 5).

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carol Keller, Acting District Director of the New York-Long Island Field Office of the United States Citizenship and Immigration Services, is automatically substituted as a party to this action in place of Andrea Quarantillo, who was sued in her official capacity as the District Director of the New York District of the United States Citizenship and Immigration Services, (Pet., ¶ 8).

1

States Department of Homeland Security ("DHS"); Rand Beers, Acting Secretary of the DHS, as successor to Janet Napolitano; the United States Citizenship and Immigration Services ("USCIS"); Alejandro Mayorkas, Director of the USCIS; and Carol Keller, Acting District Director of the New York-Long Island Field Office of the USCIS, as successor to Andrea Quarantillo, (collectively, "respondents"), seeking judicial review of the denial of his application for naturalization pursuant to, *inter alia*, Section 310(c) of the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. § 1421(c). Respondents now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the petition for failure to state a claim for relief. For the reasons set forth below, respondents' motion is granted.

II. Background

    A. Factual Background[3]

Petitioner is a native of India, who became a conditional lawful permanent resident of the United States on or about September 15, 2002.[4] (Pet., ¶ 2). Petitioner currently resides in Deer Park, New York. Id.

On or about July 6, 2010, petitioner filed an application for naturalization, Form N-400,

---

[3] The facts are taken from the allegations in, and exhibits attached to, the petition and are accepted to be true for purposes of this motion to dismiss. They do not constitute findings of fact by the Court.

[4] According to respondents, petitioner was admitted into the United States as a B-1 visitor on September 23, 1999; adjusted his status to a conditional lawful permanent resident on or about September 15, 2002, based upon his marriage to Roxanne Harrison ("Harrison"), a United States citizen; and was accorded lawful permanent resident status on July 12, 2005 after he and Harrison jointly filed a Form I-751, Petition to Remove the Conditions of Residence, in August 2004. (Respondents' Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted ["Resp. Mem."], at 3).

2

with the USCIS. (Pet., ¶ 9). On or about December 8, 2010, petitioner presented himself for examination before the USCIS. (Pet., Ex. A). The interviewing officer requested that petitioner return on January 27, 2011 with his federal income tax returns for the years 2005-2009, his marriage certificate to his current wife and a copy of his divorce decree from Harrison. Id. On January 27, 2011, petitioner returned to the USCIS and provided only his tax returns for 2009 and 2010 and his marriage certificate to his current wife. Id.

By decision dated February 11, 2011, the USCIS determined that petitioner was ineligible for naturalization based upon the following:

> "[Petitioner] and [his] second spouse jointly filed a Form I-751 'Petition to Remove Conditions on Residence' on August 20, 2004. On [petitioner's] From [sic] N-400 'Application for Naturalization' [he] stated [he] [was] divorced from [his] second wife, Roxanne Harrison, on 11/22/2002. If [petitioner] [was], indeed, divorced from Roxanne Harrison at the time of filing [his] joint Form I-751 [he] would have been deemed ineligible for the removal of conditions on [his] residence. Without the divorce decree from [his] second wife, it is not possible to determine if [petitioner] [was] eligible for the removal of the conditions on [his] residence when [he] applied on August 20, 2004. Therefore [petitioner's] case must be denied as a matter of law.
>
> This denial is without prejudice to [petitioner] filing an application for citizenship when [he] become[s] eligible under the applicable provisions of the [INA]."

(Pet., Ex. A). The February 11, 2011 decision advised petitioner, *inter alia*, that Section 336(a) of the INA requires that he file any request for a review hearing on that decision, Form N-336, with the District Director with the USCIS field office which made the decision within thirty (30) days of the date of the decision or the decision is final. Id. There is no indication in the petition or documents attached thereto that petitioner ever requested a review hearing on the February 11, 2011 decision.

On or about April 6, 2011, petitioner filed a second application for naturalization with the

USCIS. (Pet., ¶ 10, Ex. B). On or about August 2, 2011, petitioner presented himself for examination before the USCIS. (Pet., Ex. B). The interviewing officer requested that petitioner return on September 15, 2011 with a copy of his divorce decree from Harrison and IRS transcripts of his tax returns from 2006-2008. Id. On September 15, 2011, petitioner returned to the USCIS and provided the requested documents, which showed, *inter alia*, that petitioner was divorced from Harrison on November 15, 2002. Id.

By decision dated December 5, 2011, the USCIS determined that petitioner was ineligible for naturalization because its records showed that petitioner submitted Form I-751 based upon his marriage to Harrison; the petition was signed by both petitioner and Harrison; and, thus:

> "[i]t appear[ed] to the [USCIS] that [petitioner] gave false testimony on the I-751 for the purpose of obtaining permanent legal residence based on a marriage to a U.S. citizen while knowing that [he] [was] divorced and that [he] [was] in fact ineligible for the removal of conditions on [his] residence."

(Pet., Ex. B). In addition, the USCIS found that while under oath at the USCIS examination on August 2, 2011, petitioner "answered no to question 23 which asks if [he] ha[s] **ever** given false or misleading information to any U.S. Government official while applying for any immigration benefit * * *." Id. (emphasis in original).

On or about January 5, 2012, petitioner filed Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, requesting a review hearing on the December 5, 2011 decision. (Pet., ¶ 11, Ex. C). By decision dated July 25, 2012, following a hearing, the USCIS vacated the original denial of petitioner's application for naturalization based upon its determination "that the reason stated in the letter denying [petitioner's] Form N-400 for giving false testimony on the I-751 [was] incorrect * * * [because] false testimony applies only to oral

4

statements (it does not apply to falsified documents) and to testimony made under oath." (Pet., Ex. C). Nonetheless, the USCIS denied petitioner's application for naturalization on the following grounds:

> "[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of the [INA]. * * * Also, no person shall be naturalized, unless such applicant during the statutory period has been and still is a person of good moral character * * *.
>
> Evidence in [petitioner's] USCIS file shows [petitioner] [was] divorced from [his] U.S. citizen spouse, Roxanne Harrison, on November 15, 2002. The I-751, Petition to Remove Conditions on Residence, was filed jointly with Harrison and received by USCIS on August 20, 2004. The I-751 indicates [petitioner] and Ms. Harrison were living at the same address upon filing. However, [petitioner's] divorce decree clearly states that [he] and Harrison entered into a separation agreement dated September 14, 2002, and that [petitioner's] address was [different from Harrison's address] * * *. [Petitioner's] contention that [he] and [his] ex-wife were living together at the time of filing the I-751 is therefore not credible.
>
> * * * [Petitioner] acknowledge[s] that [he] could have filed the I-751 based on [his] marriage to a U.S. citizen and requested a waiver from filing a joint petition because [he] [was] divorced. The fact that [petitioner] did not request such a waiver and instead filed jointly reaffirms the USCIS position that there was misrepresentation on the I-751. Part 3, question 8 on the I-751 asks 'If you are married, is this a different marriage than the one through which conditional residence status was obtained?' The 'No' box is marked with an 'x'. [Petitioner's] answer affirms [he] [is] stating that [he] [is] still married. The signature Roxann L. Harrison in Part 5 in the box 'Signature of Spouse' is further evidence of misrepresentation since she was not [petitioner's] spouse at the time of filing the I-751.
>
> [Petitioner] also submitted supporting documentation with the I-751 including a copy of [his] IRS Form 1040 Individual Tax Return for the tax year 2003. It shows [petitioner's] filing status as 'Married filing separately' and the name 'ROXANN L HARRISON' where it says 'Enter spouse's SSN above and full name here.' Clearly, this document submitted in support of the I-751 contains misrepresentations since [petitioner] [was] not married to Harrison in 2003. It is reasonable to conclude that this document containing misinformation was submitted in an attempt to establish that [petitioner] [was] still married to Ms.

5

Harrison.

USCIS therefore finds there was misrepresentation in the filing of the I-751. To qualify for naturalization under INA section 319, [petitioner] must demonstrate that [he] meet[s] all the requirements for naturalization including the requirement of having been lawfully admitted for permanent residence. [Petitioner] ha[s] not demonstrated that [he] ha[s] been lawfully admitted for permanent residence and, therefore, [is] ineligible for naturalization. See INA 318.

Having determined that there was misrepresentation on the I-751 while applying for the immigration benefit of removal of conditions on residence, [petitioner] gave false testimony at the N-400 examination on August 2, 2011 when [he] testified that [he] had never given false or misleading information to any U.S. government official while applying for any immigration benefit. Based on the information in the record, and [petitioner's] testimony during [his] naturalization interview, USCIS finds that [petitioner] ha[s] given false testimony under oath with the intent to obtain an immigration benefit, i.e., naturalization. * * * [Petitioner] ha[s] not established that [he] [is] a person of good moral character because, during the statutory period, [he] gave false testimony to obtain an immigration benefit. Therefore, [petitioner] [is] ineligible for naturalization at this time. * * *

* * * [E]ven if it were not the position of USCIS that [petitioner] submitted a false petition to obtain an immigration benefit and subsequently committed false testimony during the course of [his] naturalization interview, [his] application would still be denied under INA section 318. [Petitioner] clearly [was] not lawfully admitted for permanent residence due to the fact that [he] received [his] permanent residence based on a joint petition which requires that a person remain married when [petitioner] [was] not.

* * * [Petitioner's] argu[ment] that the issue as to whether [he] [was] married is immaterial since [he] could have filed a waiver as a person who is divorced * * * is erroneous since there is no guarantee that the waiver would have been granted, [thus] one cannot assume that a petition would be granted. Clearly, whether a person is marred is material when adjudicating a joint petition."

(Pet., Ex. C).

On December 3, 2012, the DHS commenced removal proceedings against petitioner by filing with the immigration court and serving upon petitioner a Notice to Appear, charging petitioner as removable from the United States under Section 237(a)(1)(A) of the INA on the

basis that petitioner was inadmissible at the time of his adjustment of status pursuant to Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(C)(i).

B. Procedural Background

On or about October 19, 2012, petitioner commenced this proceeding against respondents seeking judicial review of the denial of his application for naturalization pursuant to, *inter alia*, Section 310(c) of the INA, 8 U.S.C. § 1421(c). Petitioner claims that he meets the eligibility requirements set forth in Title 8, Section 316 of the Code of Federal Regulations; that his application for naturalization was improperly denied by the USCIS; and that the findings of the USCIS regarding his eligibility were erroneous. (Pet., ¶¶ 13, 15). Petitioner seeks judgment: (1) declaring the decision of the USCIS denying his application for naturalization to be unlawful; and (2) granting (a) his application for naturalization or (b) a full hearing on this matter.

Respondents now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the petition for failure to state a claim for relief.

III. Discussion

Respondents contend, *inter alia*, that the petition fails to state a claim for relief because the initiation of removal proceedings against petitioner precludes granting him any of the relief sought herein. Petitioner contends, *inter alia*, that the initiation of removal proceedings against him after the commencement of this proceeding was retaliatory and, therefore, should not preclude granting him naturalization relief.

Although the Immigration Act of 1990 ("IMMACT") confers "[t]he sole authority to

7

naturalize persons as citizens of the United States * * * upon the Attorney General," 8 U.S.C. § 1421(a), it also "reserved a measure of naturalization jurisdiction for the courts in two circumstances: denial and delay." Ajlani v. Chertoff, 545 F.3d 229, 236 (2d Cir. 2008); see also Escaler v. United States Citizenship and Immigration Services, 582 F.3d 288, 290-91 (2d Cir. 2009) ("[T]here are statutory standards governing naturalization, and naturalization decisions by the [US]CIS (acting for the Attorney General) are subject to judicial review.") As is relevant here, "if the Attorney General denies a naturalization application, the alien can seek *de novo* review of the denial in the district court," Ajlani, 545 F.3d at 236; see 8 U.S.C. § 1421(c) ("A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides * * *. Such review shall be de novo, * * *."), after he has exhausted his administrative remedies. See Escaler, 582 F.3d at 292 ("Section 1421(c), authorizing *de novo* judicial review of the denial of an application to be naturalized, requires the exhaustion of administrative remedies prior to seeking that relief.")

The IMMACT contains a priority provision which provides, in relevant part, that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act * * *." 8 U.S.C. § 1429. Although that priority provision, by its terms, "limits only the authority of 'the Attorney General' to act on applications for naturalization when removal proceedings are pending against an alien," Ajlani, 545 F.3d at 239, the Second Circuit has held that "the priority afforded removal proceedings by Section 1429 limits the courts' authority to grant naturalization pursuant to Section 1421(c) or Section

1447(b)." Id.[5] "[D]istrict court authority to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General." Id. at 240. "[A]n alien cannot secure naturalization from either the district court or the Attorney General while removal proceedings are pending * * *." Id. at 241. Thus, it is proper for a district court to dismiss a Section 1421(c) denial claim "for failure to state a claim on which naturalization relief could be granted while removal proceedings [are] pending." Id.; see also Kolev, 2011 WL 1706799, at * 2 (holding that since "the Court lacks the authority to review the denial of plaintiff's naturalization application while removal proceedings are pending * * * the appropriate course is to dismiss plaintiff's complaint without prejudice.").

Petitioner commenced this proceeding seeking judgment: (1) declaring the decision of the USCIS denying his application for naturalization to be unlawful; and (2) granting (a) his application for naturalization or (b) a full hearing on this matter. Since Section 1429's priority provision would preclude the Attorney General from granting such relief, see, e.g. McLeary v. United States Citizenship and Immigration Services, Nos. 11-cv-6075, 11-cv-6275, 2012 WL 967970, at * 7 (W.D.N.Y. Mar. 21, 2012) (holding that in light of "Section 1429's priority provision, the pendency of removal proceedings precludes [the petitioner] * * * from stating a

---

[5] Although Ajlani, 545 F.3d at 238, involved a delay claim under 8 U.S.C. § 1447(b), two (2) of the three (3) cases from other circuits, i.e., De Lara Bellajaro v. Schiltgen, 378 F.3d 1042 (9th Cir. 2004) and Zayed v. United States, 368 F.3d 902 (6th Cir. 2004), whose reasoning the Second Circuit adopted, id. at 239-40, involved denial claims under 8 U.S.C. § 1421(c). See, e.g. Moya de Leon v. Napolitano, No. 10 Civ. 6176, 2011 WL 1990876, at * 3 n. 2 (S.D.N.Y. May 23, 2011) ("[T]he Second Circuit's reasoning in Ajlani does not suggest a basis to distinguish between cases brought under [Section 1421(c) and 1447(b)] [and] [i]ndeed, the court relied on Ninth and Sixth Circuit cases arising under Section 1421(c) in support of its holding); Kolev v. Holder, No. 11-cv-367, 2011 WL 1706799, at * 1 (E.D.N.Y. May 4, 2011) ("holding that the rationale of Ajlani "applies equally to plaintiffs [sic] request for relief pursuant to Section 1421(c).")

9

claim for relief under 8 U.S.C. § 1421(c) in the form of this Court conducting a *de novo* review of [his] naturalization claim."); Moya de Leon, 2011 WL 1990876, at * 3 (holding that Section 1429 would preclude the Attorney General from granting the petitioner a declaratory judgment regarding the "legality of Defendants' denial of Plaintiff's Application for naturalization" and "Plaintiff's *prima facie* eligibility for naturalization," and an order "directing Defendants to re-adjudicate Plaintiff's Application for naturalization"), and "a district court cannot grant naturalization relief that the Attorney General would not otherwise be permitted to grant, the [petition] must be dismissed for failure to state a claim upon which relief can be granted." Moya de Leon, 2011 WL 1990876, at * 3.

Moreover, this Court lacks jurisdiction to consider petitioner's contention that the initiation of removal proceedings against him after the commencement of this proceeding was retaliatory. See Ajlani, 545 F.3d at 235 (holding that the district court correctly concluded that it lacked jurisdiction to consider a claim that removal proceedings commenced after the filing of a federal complaint were unconstitutional and discriminatory). The REAL ID Act of 2005 provides, in relevant part, as follows:

> "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) * * *, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence [removal] proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

8 U.S.C. § 1252(g); see Reno v. American-Arab Anti-Discrimination Committee ("AADC"), 525 U.S. 471, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999) (holding that a prior version of 8 U.S.C. § 1252(g) deprived the federal courts of jurisdiction over the petitioners' selective enforcement

claim under the First Amendment).[6] Petitioner's challenge to the commencement of removal proceedings against him falls squarely within Section 1252(g). "While the statute creates an exception for 'constitutional claims or questions of law,' see [8 U.S.C.] § 1252(a)(2)(D), jurisdiction to review such claims is vested exclusively in the courts of appeals and can be exercised only after the alien has exhausted administrative remedies, see id. § 1252(a)(2)(D), (a)(5), (B)(4), (d)." Ajlani, 545 F.3d at 235.[7] The pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance.[8] Accordingly, respondents' motion to dismiss the petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and the petition is dismissed without prejudice for failure to state a claim for relief.[9]

---

[6] Although the Supreme Court did not "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations [precluding a selective enforcement claim to proceed in federal court] can be overcome," AADC, 525 U.S. at 491, 119 S. Ct. 936, this Court is without jurisdiction to consider whether this is such a case.

[7] In addition, 8 U.S.C. § 1252(b)(9) provides: "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction * * *to review such an order or such questions of law or fact."

[8] If the removal proceedings are resolved in petitioner's favor, he may commence a new proceeding seeking judicial review of the denial of his application for naturalization pursuant to the INA, 8 U.S.C. § 1421(c). If not, "the available judicial relief is that provided in 8 U.S.C. § 1252(a)(2)(D)." Kolev, 2011 WL 1706799, at * 2.

[9] In light of this determination, the Court has not considered the parties' remaining contentions.

III.  CONCLUSION

For the foregoing reasons, respondents' motion to dismiss the petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and the petition is dismissed in its entirety without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court shall close this case.

SO ORDERED.

                                                    s/ Sandra J. Feuerstein

                                                    Sandra J. Feuerstein
                                                    United States District Judge

Dated: November 18, 2013
       Central Islip, New York